**SO ORDERED.**

**SIGNED this 31 day of October, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| DAWSON CARVER | ) | No. 05-17360 |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| JAMES R. PARIS, Trustee | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. No. 06-1040 |
| | ) | |
| CYNTHIA D. CARVER; CYNTHIA D. | ) | |
| CARVER AS TRUSTEE; CAREMCO | ) | |
| INVESTMENT GROUP, LLC; FIRST | ) | |
| TENNESSEE BANK NATIONAL ASSO- | ) | |
| CIATION; ABN AMRO MORTGAGE | ) | |
| GROUP COMPANY; and LONG BEACH | ) | |
| MORTGAGE COMPANY | ) | |
| | ) | |
| Defendants | ) | |

**M E M O R A N D U M**

This adversary proceeding is before the court on a motion for partial summary judgment filed by the three principal defendants,[1] and a motion for summary judgment filed by the plaintiff. Having considered the motions, the supporting and responsive briefs, the affidavit submitted by the defendants, the parties' statements of undisputed material facts and responses, the pleadings, and the stipulations of the parties, the court will deny the defendants' motion and grant the plaintiff's motion in part and deny it in part.

### I. UNDISPUTED MATERIAL FACTS

About three months before the debtor commenced the instant Chapter 7 case, he and his wife, Cynthia D. Carver, conveyed their residence located at 528 Leafwood Drive, Hamilton County, Tennessee, to Mrs. Carver (the wife) as trustee of a certain real estate trust. (Verified Compl. ¶ 9, 5; Answer ¶¶ 9, 5.[2]) The transfer was subject to a security interest held by First Tennessee Bank, which the plaintiff does not dispute. (Compl. ¶ 10.) The parties agree that, immediately prior to these transfers, the residence was owned by the debtor and Mrs. Carver as tenants by the entirety. (Defs.' Statement of Undisputed Material Facts ¶ 2; Br. in Supp. of Pl.'s Mot. for Summ. J., at 7.)

---

[1] ABN Amro Mortgage Group Company and Long Beach Mortgage Company have been held in default by an order entered on May 5, 2006. Although named as a defendant, no relief is sought in this proceeding against First Tennessee Bank National Association. Unless the context otherwise requires, the term "defendants" as used in this memorandum is a reference to the three principal defendants that filed the motion for partial summary judgment presently before the court.

[2] "Answer" is used in this opinion to refer to the answer filed by the defendants whose motion for summary judgment is presently before the court.

At about the same time, the debtor quitclaimed to Mrs. Carver his interest in 18 tracts of real property located in Hamilton County, Tennessee. (Compl. ¶ 11; Answer ¶ 11.) Mrs. Carver immediately executed and recorded a quitclaim deed with respect to the 18 properties conveying them to Caremco Investment Group, LLC, also known as Carmeco Investment Group, LLC. (Compl. ¶ 13; Answer ¶ 13.) The transfers were subject to a security interest in one of the tracts held by ABN Amro Mortgage Group Company, which the plaintiff does not dispute. (Compl. ¶ 12.) Immediately prior to these transfers, 16 of the 18 tracts were owned by the debtor and Mrs. Carver as tenants by the entirety. The other two tracts, Tracts 4 and 11, were owned solely by the debtor before their transfer to Mrs. Carver, as shown by the deeds to those properties.[3]

By a warranty deed dated July 29, 2004, and recorded on August 4, 2004, Mrs. Carver acquired title to real property identified as Lot 27, Block K, Frazier and Colville's Addition, Hamilton County, Tennessee. (Compl. ¶ 17; Answer ¶ 17.) By a warranty deed dated August 19, 2004, and recorded on August 23, 2004, Mrs. Carver acquired title to real property identified as Lot 26, Frazier and Colville's Addition, Hamilton County, Tennessee. (Compl. ¶ 18; Answer ¶ 18.) The plaintiff alleges that these two properties were purchased with assets of the debtor's. (Compl. ¶¶ 17, 18.)

On October 14, 2005, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, on December 30, 2005, Mrs. Carver transferred to Caremco

---

[3] The defendants' contentions regarding ownership of these two tracts are discussed in Part II.A. of this opinion.

3

her interest in one of the 18 tracts that had been transferred to her in July, namely Tract 8.[4] (Compl. ¶ 14; Answer ¶ 14.) Caremco then transferred the same property back to Mrs. Carver, who then joined with the debtor in granting Long Beach Mortgage Company a security interest in the property so as to secure a loan of $112,000. (Compl. ¶ 16; Answer ¶ 16; C. Carver Dep. 51-52, Ex. 13, July 12, 2006; D. Carver Dep. 48, July 12, 2006.) The loan proceeds were used mostly to pay Mrs. Carver's personal credit card bills. (Carver Dep. 48-49, July 12, 2006.) The plaintiff does not seek to avoid or otherwise recover against Long Beach Mortgage Company (Br. in Supp. of Pl's Mot. for Summ. J., at 3-4), but seeks a recovery of half the loan proceeds instead.

On February 15, 2006, the plaintiff filed the complaint initiating this adversary proceeding, which seeks to avoid the transfers described above as fraudulent and recover and sell the properties for the benefit of the estate. The defendants have now filed a motion for partial summary judgment seeking a determination that the avoidance of the transfers of the properties previously held by the debtor and his wife as tenants by the entirety permits the plaintiff to sell only the debtor's survivorship interests. The plaintiff has filed a cross motion for summary judgment seeking a judgment avoiding the transfers, authorizing the sale of the properties, and for the sum of $56,000, which represents one-half of the proceeds of the loan from Long Beach Mortgage Company.

---

[4] Since Mrs. Carver had previously purported to convey this tract, with 17 others, to Caremco, the reason for this quitclaim deed is unclear.

## II. LEGAL DISCUSSION

### A. Original Ownership of Tracts 4 and 11

All the tracts transferred to Mrs. Carver by quitclaim deed dated July 14, 2004, were owned by the debtor and his spouse as tenants by the entirety (Defs.' Statement of Undisputed Material Facts ¶ 3; Br. in Supp. of Pl.'s Mot. for Summ. J., at 7.) except Tracts 4 and 11. With respect to Tract 4, there is a valid deed showing the debtor was the sole owner at the time he transferred the property to his wife. Mrs. Carver, however, asserts that the tract "was supposed to be title [sic] in both my name and my husband's name" when it was conveyed to the debtor in 1985 (C. Carver Aff. ¶ 7), and she asserts that she is now entitled to reform the deed to place the property in both her and the debtor's names.

There is no action for reformation pending in this court or any other. Reformation of a deed is available only where a mutual mistake of fact has occurred or where a unilateral mistake was induced by the fraud of another. *E.g.*, *City of Memphis ex rel. State v. Moore*, 818 S.W.2d 13, 16 (Tenn. Ct. App.), *perm. app. denied* (Tenn. 1991) (citing *Pierce v. Flynn*, 656 S.W.2d 42, 46 (Tenn. Ct. App.), *perm. app. denied* (Tenn. 1983)). Mrs. Carver has not offered any evidence beyond her mere supposition that a mistake was made, that it was mutual or, if unilateral, induced by any fraud. The parties to the deed are the debtor and Mr. and Mrs. Stitt, none of whom have in any way questioned the deed or their evident intentions in drawing it the way they did. In the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings, but must come forward with some *probative* evidence to support its claim. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986); *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (hold-

ing that nonmoving party must present "some significant probative evidence" that would enable a jury to return a verdict for it). In the words of Fed. R. Civ. R. 56(e), the nonmovant "must set forth *specific facts* showing that there is a genuine issue for trial." (Emphasis added). Mrs. Carver's unsupported, self-serving suppositions do not rise to the requisite level. Accordingly, the court concludes that there is no genuine issue concerning the ownership of Tract 4 and that it was owned solely by the debtor immediately prior to its July 2004 transfer.

As for Tract 11, the plaintiff has submitted a copy of a deed showing that the property was transferred solely to the debtor. The defendants contend that, notwithstanding that deed, they owned the property as joint tenants in July 2004, and they offer a Final Decree of the Chancery Court of Hamilton County, Tennessee, which was rendered in "quiet title" litigation against three other potential claimants to Tract 11, none of whom are parties to this case. Normally, plaintiffs in quiet title litigation need not prove absolute title, but only title superior to that claimed by the defendants. "Where the complainant is in possession of the property, title may be established by a deed which is doubtful or defective; he is not bound to show, as is a claimant in a possessory action, a title which is perfect against all the world." 65 Am. Jur. 2d Quieting Title § 78 (2d ed. 1972). While the decree, which is based on a default judgment as to all the defendants, recites that "the plaintiffs" have title to the properties, the court was not engaged in determining their title, particularly not their rights *inter se*, but was determining the rights as between the plaintiffs and the defendants in the case. The decree did not purport to alter the prior deed, which showed title only in the debtor, nor did it order anyone to do so. Accordingly, the court holds that the decree does not alter the fact that Tract 11 was acquired by the debtor alone and that he alone owned it at the time of its transfer to Mrs. Carver.

6

### B. Avoidance of Transfers from Debtor to His Spouse

The plaintiff seeks to avoid the transfers described above under 11 U.S.C. § 544 and the Tennessee Uniform Fraudulent Transfer Act (UFTA), Tenn.Code Ann. §§ 66-3-301 - 313, to recover the properties pursuant to 11 U.S.C. § 550, and to sell them pursuant to 11 U.S.C. § 363. Under Sections 66-3-305(a)(2) and 66-3-306(a) of the Tennessee Code Annotated, a transfer is constructively fraudulent if the transferor was insolvent and received less than reasonably equivalent value in exchange for the transfer. To take advantage of the provisions of the Tennessee UFTA, the trustee must also satisfy the requirement in 11 U.S.C. § 544(b) that there be in existence an actual unsecured creditor who could have avoided the transfers in question under the Tennessee UFTA. In the stipulation attached to the plaintiff's motion, the defendants admit that the "insolvency" and "less than reasonably equivalent value" elements and the "actual creditor" requirement have been satisfied.

The defendants, however, argue that the trustee may, under the Tennessee UFTA, avoid and recover only the debtor's survivorship interest in the properties he transferred, not the possessory interest. The difference between the two interests under Tennessee law is explained by the Sixth Circuit as follows:

> Under Tennessee law, when husband and wife hold property together, they are presumed to hold it as tenants by the entirety unless the documents which evidence their ownership indicate that the property is held separately. Under tenancy by the entirety, the husband and wife as a unit have the right to the current use and enjoyment of the property [possessory interest]. As individuals, they each possess a right of survivorship: if one spouse dies, then the other spouse takes the property in fee simple absolute [survivorship interest]. Each spouse may convey his or her right of survivorship without the consent of the other. However, the husband and wife's present right to use and enjoy the property may be transferred

7

> only by consent of both the husband and the wife. Therefore, a third party, such as a lien creditor, may own one spouse's right of survivorship without the consent of the other spouse, but a third party may not own a present possessory interest in the property without the approval of both spouses. Accordingly, a creditor of only one spouse may execute a judgment against only that spouse's right of survivorship but not against the spouse's present possessory interest.

*Arango v. Third Nat'l Bank (In re Arango)*, 922 F.2d 611, 613 (6th Cir. 1993). In this case there were, at the time of the filing of the petition, joint creditors of both the Carvers – creditors who could have executed on the possessory as well as survivorship interests of the Carvers. *See Liberty State Bank & Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 776 (6th Cir. 1985) (interpreting similar Michigan law); *Kiester v. Mizrahi (In re Mizrahi)*, 179 B.R. 322, 327-28 (Bankr. M.D. Fla. 1995) (interpreting similar Florida law); *In re Maino*, 136 B.R. 1006, 1007 (Bankr. W.D. Tenn. 1992) (holding that joint creditors may execute on property held as tenancy by the entirety in Tennessee); *In re Butcher*, 63 B.R. 30, 32 (Bankr. E.D. Tenn. 1986 (same). The trustee, who stands in the position of such joint creditors, can therefore avoid the debtor's transfer of his interest in entireties property, i.e., both the survivorship interest and the possessory interest. Since both these interests were conveyed to Mrs. Carver in the instant transfers, both can be avoided by the trustee as a joint creditor.

Even though the trustee as a joint creditor under § 544(b) may avoid the transfers by the debtor of both his survivorship interests and possessory interests in the entireties properties, the defendants argue that the Tennessee UFTA only permits the trustee to recover "judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less." Tenn. Code Ann. § 66-3-309(b). In addition, Tenn. Code Ann. § 66-3-308(a)(1) provides that a creditor may obtain "[a]voidance of the transfer or obliga-

8

tion to the extent necessary to satisfy the creditor's claim." While it is true that an avoidance under 11 U.S.C. § 544(b) must occur, if at all, under state law, the *effect* of the avoidance is determined by bankruptcy law. *Moore v. Bay (In re Sassard & Kimball, Inc.)*, 284 U.S. 4, 5 (1931); *Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243 (3rd Cir. 2000) ("[O]nce avoidable pursuant to this provision [544(b)], the transfer is avoided in its entirety for the benefit of all creditors, not just to the extent necessary to satisfy the individual creditor holding the avoidance claim."); *In re Valley City Furniture Co.*, 161 F.Supp. 39, 42 (W.D. Mich. 1958) ("[I]f the mortgage is voidable at all under State law, it is voidable in its entirety and [ ] the extent and distribution of recovery . . . is governed by the Bankruptcy Act and not by local law."); *see also* 5 *Collier On Bankruptcy* ¶ 544.09[5] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006). The Sixth Circuit, citing and following *In re Valley City Furniture Co.*, has held that a mortgage void as to a particular creditor was "also void in its entirety as to the receiver and all other creditors of the debtor." *Oliver Machinery Co. v. Bissell*, 261 F.2d 596, 597 (6th Cir. 1958). If that is so, then the extent of a trustee's avoidance cannot be limited by the ancillary provisions of a state's UFTA once the transfer is determined to be avoidable under state law. Any such limitations are inconsistent with the Bankruptcy Code and its interpretation by the courts and are therefore inapplicable in bankruptcy.

Section 363(h) of the Bankruptcy Code permits a trustee, under certain circumstances, to "sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a . . . tenant by the entirety." Normally, the trustee may not sell the debtor's possessory interest in the tenancy by the entirety because the debtor has exempted this interest under § 522(b), which permits a

9

debtor to exempt his interest in a tenancy by the entirety "to the extent that such interest as a tenant by the entirety . . . is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(2). As the Sixth Circuit has put it, "Congress implicitly defines all of [the debtor's] interest in entireties property as property which is part of his individual bankruptcy estate, but exempts his interest in entireties property from his bankruptcy estate to the extent that his interest is not subject to execution under Tennessee law." *Arango v. Third Nat'l Bank (In re Arango)*, 992 F.2d 611, 614 (6th Cir. 1993).

In this case, however, § 522(g) precludes the debtor from claiming any exemption in the interests recovered for the estate. It states that a debtor may exempt property recovered under § 550 or § 551 of the Code to the same extent as the property would have been exempt had the avoided transfer not been made, but only if "such transfer was not a voluntary transfer of such property by the debtor." 11 U.S.C. § 522(g)(1). All the transfers avoidable in this proceeding were made by the debtor voluntarily. When they are avoided, the *status quo ante* is restored. *Coleman v. Cmty. Trust Bank (In re Coleman)*, 426 F.3d 719, 726 (4th Cir. 2005) (distinguishing between avoidance and recovery and holding that "avoid" means to "make void or of no effect"); *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427-28 (6th Cir. 2003) (distinguishing between avoidance and recovery and holding that "immediately upon avoidance of the transfer . . . [the] property returned to the estate without need for resort to the recovery process"). Once avoidance occurs and the transfer is nullified, the property can be dealt with as though it had never left the estate. Ordinarily, the debtor could exempt such property under § 522(b), but § 522(g) prevents the debtor from taking the exemption because he voluntarily transferred the interests avoided.

Thus the debtor's interest is not exempt under the facts of this case, and his entire interest as tenant by the entirety is included in the estate.

This conclusion is supported by Judge Lundin's opinion in *Waldschmidt v. Hamilton (In re Hamilton)*, 32 B.R. 337 (Bankr. M.D. Tenn. 1983). There, the debtor and his nondebtor spouse owned property as tenants by the entirety. The debtor filed a bankruptcy petition and elected to use the federal exemptions, rather than those provided by Tennessee law. The trustee filed a complaint seeking authorization to sell the property under § 363(h). *Id.* at 338. The court held that § 522(b)(2)(B)'s exemption for a Tennessee debtor's present possessory interest in property held in a tenancy by the entirety does not apply where the debtor elects the federal exemptions under § 522(b)(1):

> The second step in *Shaw* is the recognition by Judge Hippe that a survivorship interest in Tennessee is not an "undivided interest" but is in fact separate, alienable property. Since § 363(h)(2) discusses only the sale of the estate's "undivided interest" in property, *Shaw* holds that a right of survivorship, by itself, is not a property interest which can support a trustee's effort to sell the whole property pursuant to § 363(h). . . .
>
> As the analysis in *Shaw* suggests, the opposite result obtains where the debtor spouse claims the federal exemptions set forth in § 522(b)(1). First, the specific exemption for entirety property provided in § 522(b)(2)(B) for debtors electing the state exemptions does not appear in the federal exemption scheme under § 522(b)(1). Secondly, absent § 522(b)(2)(B), the debtor's complete "undivided" interest in entirety property—including the possessory rights enumerated above—becomes and remains part of the bankruptcy estate, subject only to exemption under the applicable subsections of § 522(d).
>
> The contrary result occurs because of the different nature of the property interest that remains in the bankruptcy estate under the federal exemption scheme. Under the federal exemptions, a debtor's undivided possessory rights to entireties property, immune from process under state law, are not automatically exempted from the bankruptcy estate.

> Under the Code, . . . such an interest [in entireties property] is property of the estate and may under certain circumstances be administered for the benefit of creditors under Code § 363(h) unless it is made exempt. It is made expressly exempt by Code § 522(b)(2)(B). There is no comparable provision for debtors who select the . . . [federal] . . . exemption system.
>
> 1 Norton Bank.L. & P. § 26.10 (1981).

*Waldschmidt v. Hamilton (In re Hamilton)*, 32 B.R. 337, 340 (Bankr. M.D. Tenn. 1983) (additional citations omitted).

Here, the § 522(b)(2)(B) exemption for the debtor's present possessory interest in the properties is unavailable by virtue of § 522(g), just as the exemption was unavailable in *Hamilton* by virtue of the debtor's election to proceed under the federal exemption scheme. Accordingly, the court holds that § 363(h) is available to a trustee who recovers entirety interests that the debtor has voluntarily transferred prepetition to a spouse who is not in bankruptcy.

For the foregoing reasons, the court will deny the defendants' motion for partial summary judgment. The court will also deny the plaintiff's motion for summary judgment in this regard because he has not introduced any evidence as to any of the four prerequisites to a sale under § 363(h). The court will, however, grant the plaintiff's motion with respect to the two tracts originally titled solely in the debtor's name, avoiding the transfers of those properties to Mrs. Carver and authorizing the sales of the properties.

### C. Acquisitions of Properties by Cynthia Carver

Prepetition, Mrs. Carver acquired two properties from third parties. The properties were purchased with funds generated by rental properties that the debtor and Mrs. Carver owned joint-

ly. The plaintiff asserts that the conveyances to Mrs. Carver constitute fraudulent transfers because the two properties were paid for with assets of the debtor's, so the conveyances constitute transfers of interests of the debtor in property. The court disagrees.

The "interests in property" transferred to Mrs. Carver were interests held by the sellers, not the debtor. The debtor may have transferred to her his interest in the rentals used to pay for the properties, and those transfers could constitute fraudulent conveyances with the funds recoverable from Mrs. Carver. But that is not what the plaintiff has alleged.[5] He claims that he may sell the properties themselves for the benefit of the estate, and that he may not do. Accordingly, the court will deny the plaintiff's motion for summary judgment with respect to these two properties.

### D. Proceeds of Long Beach Mortgage Loan

One of the 18 tracts (Tract 8) that the debtor purported to convey to Mrs. Carver in July 2004 was mortgaged postpetition by Mrs. Carver to secure a loan to her from Long Beach Mortgage Company. The debtor also signed the operative deed of trust. The plaintiff seeks to recover half of the proceeds of that loan, alleging that the mortgage constituted an unauthorized postpetition transfer avoidable under 11 U.S.C. § 549. The issue is whether the property constituted property of the estate at the time of the loan, even though titled in Mrs. Carver's name, given that the transfer of the debtor's interest to Mrs. Carver is avoidable as a fraudulent conveyance.

---

[5] Nor has the plaintiff alleged the existence of a purchase money resulting trust, *see*, *e.g.*, *Classic Refinery, Inc. v. United States*, No. 1:97-CV-500, 1999 WL 314812, at *5 (E.D. Tenn. Apr. 5, 1999), such that title to the properties should be considered held by the debtor or jointly by the debtor and Mrs. Carver.

13

As explained above, the avoidance of the debtor's transfer of his interest in Tract 8 to Mrs. Carver results in the resurrection of the tenancy by the entirety. The deeds from Mrs. Carver to Caremco, therefore, served only to convey her survivorship interest in the property but, because the debtor joined with Mrs. Carver in executing the deed of trust, the security interest attached to the entire ownership of the property. It follows that the deed of trust from Mr. and Mrs. Carver did effect a postpetition transfer of property of the debtor, namely his entireties interest in Tract 8.

The court has previously entered a default judgment against Long Beach Mortgage Company, in effect establishing that the transfer of the security interest to Long Beach was avoidable under § 549. However, Long Beach has now filed a motion to set aside the default judgment entered against it, and, accordingly, there is a question about whether the transfer of the deed of trust to Long Beach is an avoidable transfer under § 549. Moreover, even if it is avoidable, the plaintiff has not shown that he is entitled to recover one-half of the loan proceeds.

Section § 550(a)(1) of the Bankruptcy Code specifies the remedy when a transfer is avoided under § 549:

> [T]he trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> >
> > (2) any immediate or mediate transferee of such initial transferee.

The plaintiff does not seek to recover the property transferred (the security interest), but seeks to recover from Mrs. Carver the value of the security interest conveyed to Long Beach in the debt-

14

or's half interest in the property. Although Long Beach, not Mrs. Carver, is the initial transferee of the transfer, the transfer was made for Mrs. Carver's benefit, since she borrowed the funds for use primarily in paying her personal credit card debts. *See generally*, *e.g.*, *Rupp v. Markgraf*, 95 F.3d 936, 943 (10th Cir. 1996). Thus, if an award of the value of the property transferred (rather than avoidance of the mortgage on the debtor's interest) is an appropriate remedy in this case,[6] that value may be recovered from Mrs. Carver to the extent she benefitted from the transaction. There is, however, a genuine issue as to the value of the mortgage on the debtor's interest in the property.[7] In addition, insufficient evidence has been offered to show the extent to which Mrs. Carver benefitted from the loan to the exclusion of the debtor.[8] Accordingly and on account of the pendency of Long Beach Mortgage Company's motion for relief from the default judgment,

---

[6] "When a preferential transfer is avoided, the plain language of § 550(a) allows the trustee to recover the property transferred or its value. However, the section does not offer any guidance in determining which remedy the trustee should receive. Cases have held that the language of § 550 requires that the court order the property returned unless it would be inequitable to do so. Other cases, however, suggest that the decision to return the property or its value is at the discretion of the bankruptcy court." *Kepler v. Sec. Pac. Hous. Servs. (In re McLaughlin)*, 183 B.R. 171, 176 (Bankr. W.D. Wis. 1995) (citations omitted).

[7] While the $112,000 advanced may represent an upper limit on the value of the security interest, *see also Brown v. Gen. Elec. Capital Corp. (In re Foxmeyer Corp.)*, 286 B.R. 546, 562, 572 (Bankr. D. Del. 2002) (holding that value of security interest was amount advanced because creditors were oversecured), no evidence has been offered to show that Tract 8 was worth at least that amount when the transfer was made (if the property is valued as of the time of transfer, rather than at the time the petition was filed or the time judgment is entered). Indeed, Ms. Carver testified that it was her recollection that the property was appraised at that time for $100,000. (C. Carver Dep. 49, July 12, 2006.)

[8] The parties agree that the debtor received some benefit from the loan, in that $15,000-$16,000 of the loan proceeds were used to pay joint credit card debts. In addition, an unspecified portion of the funds were used to improvements to real estate that, as a result of the avoidance of the transfer(s), is jointly owned by the debtor and Ms. Carver.

15

the court will deny the plaintiff's motion insofar as it seeks a money judgment against Mrs. Carver for half of the loan proceeds.

### III. CONCLUSION

For the foregoing reasons, the court will deny the defendants' motion for partial summary judgment and will grant the plaintiff's motion in part and deny it in part. More specifically, with respect to the plaintiff's motion for summary judgment the court will enter a separate order (1) avoiding the transfers of 19 tracts of real property from the debtor to Mrs. Carver made by quitclaim deeds dated July 14, 2004, and (2) authorizing the plaintiff to sell Tracts 4 and 11 of the 18 tracts transferred on that date. All other aspects of the plaintiff's motion for summary judgment will be denied.

###